Revised August 12, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-20343

---

MARK NEWBY; ET AL.,

                                        Plaintiffs,

FLEMING & ASSOCIATES L.L.P.,

                                        Plaintiff-Appellant,

DAVID JOSE; JAMES BRISTER; PETER MAXFIELD,
GEORGE ATALLAH,

                                        Appellants.

                        versus

ENRON CORP; ET AL

                                        Defendants

ANDREW S. FASTOW; JEFFREY J. SKILLING;
DAVID B. DUNCAN; KENNETH L. LAY

                                        Defendants-Appellees.

---

Appeal from the United States District Court
For the Southern District of Texas

---

August 9, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    Fleming & Associates, a Houston-based law firm, and its clients David Jose, James Brister, Peter Maxfield, and George Atallah appeal the district court's order dissolving a temporary restraining order issued by a state court and enjoining Fleming

from filing any new Enron-related actions without leave of the district court.

Fleming and its clients argue that the district court lacked authority to enjoin prospective state court actions, that the Anti-Injunction Act barred the district court from doing so, and that the district court abused its discretion in issuing the injunction.[1] We affirm.

I

Fleming has thus far filed at least seven lawsuits in state courts throughout Texas, alleging securities fraud arising out of the business failure of Enron Corporation. Each suit stated claims for fewer than fifty plaintiffs in complaints crafted to avoid the provisions of the Securities Litigation Uniform Standards Act of 1998, which made federal court the exclusive venue for class actions alleging fraud in the sale of covered securities.[2] SLUSA defines a "covered class action" as a single lawsuit in which damages are sought on behalf of more than 50 persons,[3] but Fleming's state court suits were each brought on behalf of less than 50 plaintiffs. Fleming has several hundred additional clients, and has advised this court of plans to file similar state court securities-related lawsuits on their behalf if permitted to do so.

---

[1] The temporary restraining order expired by its own terms, and the order directing that it be dissolved is not before us.

[2] 15 U.S.C. §§ 77p, 78bb(f).

[3] 15 U.S.C. § 77p(f)(2).

2

At all relevant times, over 70 cases arising from the Enron collapse have been pending in the Southern District of Texas. Several shareholder suits have been consolidated into a case styled *Mark Newby, et al. v. Enron Corp, et al.* On April 16, 2002, the Judicial Panel on Multidistrict Litigation transferred all such federal Enron-related actions to the Southern District of Texas for pre-trial coordination. On the recusal of another judge, the cases were transferred to Judge Melinda Harmon. As the MDL judge she has ruled on many motions and has been heavily engaged in the considerable task of managing this complex litigation, including the filing of a comprehensive pre-trial scheduling order. Fleming represents clients with claims that are part of the MDL proceedings.

On December 5, 2001 the district court denied an application for a freeze order. Then, on January 23, 2002, the district court ordered defendant Arthur Andersen, L.L.P. to segregate, preserve, and protect all writings and other materials relating to Enron and any Enron-related entities. The district court also ordered depositions of individuals connected with Andersen on topics relating to document and data retention and destruction.

Meanwhile, Fleming filed the first state court suit on November 7, 2001 in Harris County, Texas on behalf of Fred and Marian Rosen, asserting breach of fiduciary duty of loyalty and

care.[4] On January 16, 2002, Fleming filed an amended petition on behalf of the *Rosen* plaintiffs, naming 21 new defendants and transforming the action into a state court securities fraud suit. The amended petition requested a temporary restraining order against Andersen to prevent Andersen from destroying Enron-related documents. Two days later, the state court in the *Rosen* case issued an *ex parte* TRO against Andersen.

Eight days later, Fleming filed *Bullock v. Andersen* on behalf of eleven plaintiffs in state court in Washington County, Texas. Among other relief, the *Bullock* plaintiffs sought a TRO against Andersen and former Enron CEO Kenneth Lay concerning the preservation of Enron-related documents. On the same day, the state court issued an *ex parte* TRO against Andersen, granting relief that was identical to the evidence order issued by Judge Harmon in *Newby*.

Five days later, on January 29, 2002, Fleming filed the *Ahlich* suit in Brazos County, Texas. This suit was brought on behalf of 45 plaintiffs, purchasers of an unknown amount of Enron stock. Fleming also sought an identical *ex parte* TRO against Andersen and Lay. Defendants were given no notice of the filing of the suit or the application for a TRO.

Eight days later, Fleming filed *Jose, et al. v. Arthur*

---

[4] Virtually all the defendants in the state court cases were also defendants in federal cases.

*Andersen, L.L.P., et al.* in Bexar County, Texas, making essentially the same allegations as the previous suits against the same 37 defendants named in the *Ahlich* suit. Once again, Fleming sought an *ex parte* TRO, which the state court granted on the same day. Fleming provided no notice to defendants before seeking the TRO. The TRO, like the previous orders granted by the state courts, enjoined defendants from destroying, altering, or deleting Enron-related documents. Unlike the others, it also prevented defendants from transferring any property, funds, or assets to third parties not in the ordinary course of their business and from transferring assets out of the United States.

Five days later, Lay and Skilling urged Judge Harmon to enjoin Fleming from requesting further injunctive relief in state court without providing notice to them. After a hearing, the federal district court on February 15 enjoined Fleming from filing any new Enron-related actions without leave of the district court and ordered Fleming to dissolve the TRO obtained in *Jose*. The district court rested its authority to issue the injunction in the All Writs Act, the Anti-Injunction Statute, and its inherent authority.

On February 19, Fleming sought leave to file two Enron-related actions in state court, which the district court denied, noting that Fleming failed to provide the court with copies of the lawsuits that it wished to file. Fleming's motion to file the state court suits did not describe the nature of the injunctive relief

sought by Fleming or delineate the allegations made in the suits. On February 22, Fleming petitioned this court for a writ of mandamus, along with a motion for emergency relief seeking a stay of the district court's order. We denied relief, noting that orders granting an injunction are appealable.

Fleming and the *Jose* plaintiffs now appeal the injunction, arguing that the district court lacked subject matter jurisdiction or the authority to grant it, that the Anti-Injunction Act barred the district court from enjoining state proceedings, and that its issue was an abuse of discretion.

## II

As a preliminary matter, we note that Fleming's argument that the district court had no authority to order Fleming to obtain the dissolution of the *Jose* TRO is moot. Under Texas state law, the TRO was effective for only fourteen days,[5] and before the expiration of the fourteen days, Andersen removed the *Jose* action to federal court. Because the TRO was never dissolved and would have expired in any case, this issue is moot and is not likely to occur again.

## III

Preliminary matters aside, we turn to the jurisdiction of the district court to enjoin Fleming from filing any new Enron-related actions without leave of the court. The contention here is that the district court's claim of authority to enjoin Fleming under "the

---

[5] TEX. R. CIV. P. 680.

All Writs Act, the Anti-Injunction Statute, and its inherent authority" is mistaken. We agree that the All Writs Act and the Anti-Injunction Act do not afford independent grounds for the jurisdiction of the district court.[6] At the same time, the district court plainly had jurisdiction over the actions pending before it in the *Newby* litigation, and jurisdiction over the *Jose* state court action was not necessary.

Similarly, a federal district court can exercise ancillary jurisdiction over a second action in order "to secure or preserve the fruits and advantages of a judgment or decree rendered" by that court in a prior action,[7] but we need not draw upon that power here. It is a given that the district court, with jurisdiction over *Newby*, had subject matter jurisdiction to issue an injunction to preserve and protect its jurisdiction. As we will explain, the district court had the authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to maintain the cooperative approach essential to preserving fair processes in the complex suit in federal court.

IV

---

[6] *Regions Bank of La. v. Rivet*, 224 F.3d 483, 493 (5th Cir. 2000) (holding that neither the All Writs Act nor the Anti-Injunction Act create jurisdiction).

[7] *Id.; Royal Ins. Co. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992).

We review the district court's grant of an injunction for an abuse of discretion, and underlying questions of law *de novo*.[8]

Although the Anti-Injunction Act is an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless the action falls within a designated exception,[9] it does not preclude injunctions against a lawyer's filing of *prospective* state court actions.[10] Even so, we are constrained by the overarching principle that federal courts must be wary of infringing on legitimate exercises of state judicial power.[11] The All Writs Act provides that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[12] The Act contains the same language as the second of the three exceptions in the Anti-Injunction Act, and the parallel "necessary in aid of jurisdiction" language is construed similarly in both the All Writs Act and the Anti-Injunction Act.[13]

---

[8] *Women's Medical Center of Northwest Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001); *Regions Bank*, 224 F.3d at 488.

[9] 28 U.S.C. § 2283.

[10] *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965); *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 132 & n.8 (5th Cir. 1990).

[11] *See generally Younger v. Harris*, 401 U.S. 37, 44-45 (1971).

[12] 28 U.S.C. § 1651(a).

[13] *In re Diet Drugs*, 282 F.3d 220, 239 (3d Cir. 2002); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996); *In re*

Courts have read this language narrowly, finding a threat to the court's jurisdiction only where a state proceeding threatened to dispose of property that formed the basis for federal in rem jurisdiction or where the state proceeding threatened the continuing superintendence by a federal court.[14] Here also principles of federalism lie behind our reluctance to adopt an expansive reading of "necessary in aid of jurisdiction," which extends to injunctions against prospective state court proceedings, even though they escape the reach of the Anti-Injunction Act.

At the same time, it is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court.[15] We have upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents.[16] That order applied to both federal and state suits, and unlike the injunction at issue here, did not invite the plaintiff to seek leave of the court to file suit.

---

*Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).

[14] *State of Texas v. United States*, 837 F.2d 184, 186 n.4 (5th Cir. 1988).

[15] CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2942, at 63-64 (2d ed. 1995).

[16] *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980).

Similarly, federal courts also have the inherent power to impose sanctions against vexatious litigants. In *Chambers v. Nasco, Inc.*,[17] the Supreme Court upheld the imposition of sanctions against a litigant who had repeatedly engaged in bad-faith conduct.[18] The inherent power is limited and interpreted narrowly,[19] and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties.[20] Nonetheless, the Court held that resorting to the inherent power to sanction a vexatious litigant was appropriate where there was repeated bad-faith conduct that was beyond the reach of the Federal Rules of Civil Procedure.[21] Although the sanctions in *Chambers* were limited to attorney's fees and associated expenses, the Court recognized that the outright dismissal of a lawsuit under the inherent power is within the court's discretion.[22]

While the *Chambers* Court held that the inherent power reaches beyond the confines of the court to conduct that does not interfere

---

[17] 501 U.S. 32 (1991).

[18] *Id*. at 46.

[19] *Id*. at 42.

[20] *Id*. at 43; *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1360 (5th Cir. 1978).

[21] *Chambers*, 501 U.S. at 50-51.

[22] *Id*. at 45 (citing *Roadway Express v. Piper*, 447 U.S. 752, 761 (1980)).

with the conduct of trial,[23] we recognize that this represents the outer reaches of the inherent power.[24] Given that the district court has power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions,[25] we leave the question of its ability to do so under its inherent power for another day.

The district court in this case was attempting to rein in a law firm that represents over 750 plaintiffs but has artfully avoided the Securities Litigation Uniform Standards Act by filing lawsuits in counties across the State of Texas that are not denominated class actions and each with fewer than 50 plaintiffs. Fleming's efforts to avoid the Standards Act are not themselves an abuse of the courts. Certainly that effort would alone not support an order enjoining the filing of state court suits in the future without the district court's permission, as we will explain. The problem is Fleming's unjustified and duplicative requests for *ex parte* temporary restraining orders, without notice to lawyers already across the counsel table from Fleming and engaged in the prosecution and defense of virtually identical claims in federal suits.

---

[23] *Id*. at 44.

[24] *See id*. at 60 (Scalia, J., dissenting); *id*. at 67 (Kennedy, J., dissenting).

[25] *See supra* notes 13-14 and accompanying text.

Fleming did not attempt to provide defendants with advance notice before seeking temporary restraining orders, and the applications for TRO and form orders filed in state court by Fleming indicated on their face that the TROs were sought without notice to the defendants. Fleming ignored defendants' attempts to communicate with them and their requests for notice. The TROs obtained by Fleming granted relief that had already been obtained from the district court in the *Newby* litigation, and in one case provided relief that the district court had denied after a hearing at which all parties were present. Fleming has expressed its intention to continue filing these state court suits and has not agreed to notify defendants before seeking a TRO against them.

In sum, the district court did not err in concluding that Fleming's actions constitute a sufficiently serious and systematic abuse of the courts to warrant the injunction. We hold that the district court had authority under the All Writs Act to enjoin Fleming from filing future state court actions without its permission and did not abuse its discretion in doing so.

VI

Only this narrowly crafted injunction is before us. The district court retains the authority to modify or dissolve the injunction as this saga plays out. It also has a duty to consider Fleming's requests for leave to file suit in state court. Fleming

did not raise or argue before us the district court's denial of leave to file two cases in state court, and the district court properly denied leave based upon Fleming's failure to provide copies of the lawsuits it planned to file or to give assurance that it will cease the *ex parte* tactics.

But the district court cannot predicate future denials of leave solely upon Fleming's desire to avoid the reach of the Securities Litigation Uniform Standards Act. We do not question the filing of suits tailored to avoid federal jurisdiction. Nor do we countenance any preemptive federal dominion. The parallel exercise of state and federal judicial power is inherent in our government of dual sovereignty. This duality, however, offers no shelter to sharp practice from the enforcing arm of the state or federal courts. Nor is zealous duty to a client a cover for rude refusals to afford opposing counsel the common courtesy of notice. That the rules contemplate specific circumstances where *ex parte* relief without notice may be obtained offers no comfort to Fleming. It bears emphasis that when Fleming made the contested state court filings, it was already counsel in the federal proceedings, engaged with the counsel to the same parties in federal court that it sought *ex parte* relief from in state court. The district court properly saw these moves in state court to be unjustified efforts to harass parties to the federal cases, and viewed its response as not burdening rights to proceed to state court.

The advocate is duty-bound to protect his client's interests, and choices of venue and timing belong to him. But the court has the power, indeed the duty, to remind counsel that they are professionals and order their return to the playing field. This is no matter of rules of fine etiquette. Rather, it is the matter of lawyers as officers of the court conducting themselves in ways that do not impede the work of the courts—the genuine and not false service to their clients. We do not mean to be unduly critical in the sense of singling out the law firm now on the carpet. We are aware that such sharp practice is increasingly common, even among able lawyers as those before us. We have no reason to believe this was other than an unfortunate episode that will not occur again. In any event, the district court had the power and duty to stop it, as she did.

AFFIRMED.