**In re WORLDCOM, INC. SECURITIES LITIGATION**

**Jackie S. Bell, et al., Plaintiffs,**

**v.**

**Bernard J. Ebbers, et al. Defendants.**

**Nos. 02 Civ. 3288(DLC), 03 Civ. 4490.**

United States District Court,
S.D. New York.

Feb. 20, 2004.

Paul Curnin, David Elbaum, Simpson Thacher & Bartlett LLP, New York City, for Director Defendants.

Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Walter Rieman, Marc Falcone, Joyce S. Huang, Paul Weiss Rifkind Wharton & Garrison LLP, New York City, Robert McCaw, Peter K. Vigeland, Wilmer Cutler & Pickering, New York City, for Defendants Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney, Inc., Citigroup Inc., and Jack Grubman.

## OPINION & ORDER

COTE, District Judge.

The defendants' motion to dismiss—made in the context of the securities litigation that has accompanied the collapse of WorldCom, Inc. ("WorldCom")—addresses whether ten lawsuits, filed in nine separate Mississippi counties and bringing identical securities fraud and negligence claims under state law against defendants associated with WorldCom, are preempted by the Securities Litigation Uniform Standards Act, Pub.L. No. 105–353, 112 Stat. 3227 (1998) ("SLUSA") (codified in scattered sections of Title 15 of the United States Code). For the reasons set forth below, the defendants' motion is granted.

### Background

On June 25, 2002, WorldCom declared that it would undertake a massive restatement of its financial statements. Shortly thereafter, it filed the largest bankruptcy in United States history.

Even before WorldCom's June 25 announcement, the first class action alleging WorldCom claims was filed in the Southern District of New York on April 30, 2002 and assigned to this Court. Subsequent actions, alleging either class or individual claims ("Individual Actions"), were filed in this district or transferred to this Court by

William C. Spencer, L.F. Sams, Jr., Donna M. Barnes, Mitchell, McNutt & Sams, P.A., Tupelo, MS, Michael D. Greer, Greer & Pipkin, Tupelo, MS, Grant M. Fox, Fox & Fox, P.A., Tupelo, MS, for Plaintiffs.

David Wertheimer, Lyndon Tretter, Hogan & Hartson, New York City, for Defendant Bernard J. Ebbers.

Bernard J. Ebbers, R. David Kaufman, M. Patrick McDowell, Brunini Grantham Grower & Hewes PLLC, Jackson, MS, for Defendant, of counsel.

the Judicial Panel on Multi–District Litigation ("MDL Panel"). The class actions were consolidated for pre-trial purposes by Order dated August 15, 2002.

The Individual Actions which had been filed in state court had been removed to federal court as "related to" the World-Com bankruptcy, and in some instances, on other grounds as well. By Order dated December 23, 2003 ("December 23 Order"), the Court found that the Individual Actions and the securities class actions involved common questions of law and fact, and that consolidation of these actions for pretrial proceedings was necessary. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2002 WL 31867720, at \*1 (S.D.N.Y. Dec. 23, 2002). The Individual Actions were consolidated with the World-Com class action for pre-trial purposes by Opinion and Order dated May 28, 2003 ("May 28 Order"). *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21242882 (S.D.N.Y. May 28, 2003).[1] Pursuant to the May 28 Order, actions transferred to this Court are automatically consolidated with *In re Worldcom, Inc. Securities Litigation* unless plaintiffs objected to consolidation within ten days after service on their counsel of the Consolidation Order.

An Opinion of March 3, 2003, resolved the first motion to remand brought before this Court on behalf of an Individual Ac-

tion. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 323–324 (S.D.N.Y.2003) ("March 3 Opinion"). In denying the motion to remand, the March 3 Opinion found that the Individual Actions considered in that Opinion were sufficiently "related to" the WorldCom bankruptcy to support federal jurisdiction over them and their removal to federal court. An Order of June 11 required plaintiffs in any other Individual Action whose action was transferred and assigned to this Court on or after June 11, 2003, and who had made a timely motion to remand, to show cause within three weeks of the action's arrival on this Court's docket why the analysis in the March 3 Opinion did not require the denial of their remand motion. Failure to so renew the motion meant that the remand motion was deemed withdrawn.

At a conference on September 12, defense counsel gave notice of their intent to bring two separate sets of motions to dismiss claims that are common to many Individual Actions.[2] The second tranche of such motions included the instant motion, which addresses preemption issues under SLUSA.[3] As instructed by a September 22 Scheduling Order, defendants have moved to dismiss one of the Individual Actions implicated by this motion and the plaintiffs in the similarly situated Individual Actions were given an opportunity to submit an amicus brief and will also have

1. By Opinion and Order dated May 19, 2003, defendants' motions to dismiss the Class Action Complaint were denied with limited exceptions. *See In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392 (S.D.N.Y.2003). By Opinion and Order dated October 24, 2003, the lead plaintiffs' motion to certify a class was granted. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y.2003).

2. The first tranche of motions to dismiss addressed defendants' claims that there were statute of limitations bars to claims asserted in certain Individual Actions and that a December 2000 WorldCom private placement

does not give rise to a Securities Act of 1933 claim. The first tranche of motions to dismiss were granted in large part. *See In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 431 (S.D.N.Y.2003); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22790942 (S.D.N.Y. Nov. 25, 2003); *In re WorldCom, Inc. Sec. Litig.*, 308 F.Supp.2d 214, 2004 WL 77879 (S.D.N.Y.2004).

3. The second tranche of motions to dismiss also involves the liability of holding companies for Securities Act claims. This issue will be addressed in a separate Opinion.

an opportunity to show cause why the Opinion issued today does not control any motion to dismiss their actions.[4]

The complaint that is the subject of this motion to dismiss is one of ten identical complaints ("Ten Actions" and "Ten Complaints") filed in late 2002 and January 2003 by the same attorneys in the Circuit Court in nine different northern Mississippi counties. The Ten Actions are brought on behalf of between five to forty-eight plaintiffs, for a total of 293 plaintiffs, and assert exclusively state securities fraud and negligence claims against certain former and current WorldCom officers and directors, and Salomon Smith Barney and its former employee Jack Grubman as an investment analyst who issued research reports relating to WorldCom (the "SSB Defendants").[5] The action that is the subject of this motion, *Bell, et al. v. Ebbers, et al.*, 03 Civ. 4490 ("Bell Action" and "Bell Complaint") was filed in the Circuit Court of Itawamba County, Mississippi by 27 current and former shareholders of World-Com. Each of the Ten Complaints explicitly renounces federal causes of action. For example, the Bell Complaint states "[p]laintiffs assert no federal claim in these proceedings and withdraw any federal claims asserted unintentionally."

With the exception of the names of the plaintiffs and the name of the counties in which they were filed, all Ten Complaints are verbatim copies of each other right down to the typographical errors. Indeed, nine of the ten complaints, including the Bell Complaint, assert that "[v]enue is proper since a number of Plaintiffs are residents of *Lee* County, Mississippi." (emphasis supplied). Only two of these complaints were actually filed, however, in Lee County. As noted, the same attorneys are listed on each complaint. The Ten Actions have continued to act in unison following their filing.[6]

---

4. No amicus brief was filed by plaintiffs' counsel in response to this motion, undoubtedly because the same counsel represent the plaintiffs in the action subject to this motion and in the other Mississippi actions which present the same issue.

5. The ten complaints are as follows:

(1) *Beane, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Lee County, No. CV02–186(G)L, now No. 03 Civ. 4489 (44 plaintiffs).
(2) *Bell, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Itawamba County, No. 02–154(F), now No. 03 Civ. 4490 (27 plaintiffs).
(3) *Beasley, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Monroe County, No. CV–02–468–PFM, now No. 03 Civ. 4491 (34 plaintiffs).
(4) *Allen, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Oktibbeha County, No.2002–0492–CV, now No. 03 Civ. 4492 (40 plaintiffs).
*(5) Bryant, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Chicksaw County, No. 02002–98, now No. 03 Civ. 4493 (23 plaintiffs).
(6) *Jourdan, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Lee County, No. CV02–368(PF)L, now No. 03 Civ. 4494 (5 plaintiffs).

(7) *Anderson, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Lafayette County, No. L02–522, now No. 03 Civ. 4495 (22 plaintiffs).
(8) *Adcock, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Grenada County, No.2002–0520CV–M, now No. 03 Civ. 4496 (48 plaintiffs).
(9) *Carpenter, et al. v. Ebbers, et al.*, Miss. Cir. Ct., Pontotoc County, No. CV–02–300F(Po), now No. 03 Civ. 4497 (39 plaintiffs).
(10) *Bagwell, et al. v. Ebbers, et al.*, Miss. Cir. Ct., DeSoto County, No. CV 20002–345, now No. 03 Civ. 6222 (11 plaintiffs).

6. The plaintiffs have filed ten identical sets of all their court papers. For example, it is uncontested that when plaintiffs moved before the Northern District of Mississippi to remand all ten actions to state court, counsel for plaintiffs filed a brief in support of their motion for remand in one case, and filed a two-sentence statement of joinder in the remaining cases. Furthermore, on two occasions in this Court, all ten actions filed one, joint motion regarding the timing of their right to dismiss their complaints voluntarily. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22790942 (S.D.N.Y. Dec. 1, 2003).

The defendants timely removed the Ten Actions to the United States District Court for the Northern District of Mississippi, claiming that they are a "covered class action" within the meaning of SLUSA, thereby permitting removal under 15 U.S.C. §§ 77p(c) & 78bb(f)(2).[7] Defendants further claimed that the actions are "related to" the WorldCom bankruptcy case, providing federal jurisdiction under 28 U.S.C. § 1334 and removal authority under 28 U.S.C. §§ 1452, 1441. On July 7, 2003, the MDL Panel transferred the Ten Actions to this Court for pre-trial proceedings pursuant to 28 U.S.C. § 1407.

Following their arrival on this Court's docket, the plaintiffs in the Ten Actions made no objection to the consolidation of their actions with each other and with *In re Worldcom, Inc. Securities Litigation* for pretrial purposes, and thus, have consented to such consolidation. In addition, they did not renew their motions for remand and under the terms of the May 28 Order, plaintiffs have forfeited their right to remand.[8]

Defendants have moved to dismiss the Bell Action on the ground that it is a "covered class action" and therefore federally preempted. As the parties acknowledge, this motion requires consideration of the Ten Actions taken together as well as the Bell Action.

*Discussion*

It is undisputed that the attorneys representing the *Bell* plaintiffs drafted the complaint, and coordinated the filing of the other Nine Actions, with the intention of evading SLUSA's preemption provisions. The question presented through the defendants' motion is whether their efforts to evade SLUSA have been successful. To answer this question, this Opinion describes the background to the passage of SLUSA, the requirements of SLUSA implicated by this motion, and whether the Bell Complaint, when considered with the other Nine Actions, constitutes a "covered class action," as that term is defined by SLUSA. This latter issue requires consideration principally of whether the Ten Actions are a "single lawsuit" or whether the Ten Actions are a "group of lawsuits" pending in the same court and "proceed[ing] as a single action for any purpose." Lastly, the plaintiffs' judicial estoppel argument is addressed.

1. *Background of SLUSA*

■ SLUSA, enacted in 1998, was passed "in response to a demonstrably unavailing attempt by Congress, through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 109 Stat. 737 (1995) (codified in part at 15 U.S.C. §§ 77z–1, 78u), to prevent strike suits, described as meritless class actions that allege fraud in the sale of securities." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2d Cir.2003) (citation omitted). The PLSRA had imposed stringent pleading requirements and mandatory discovery stays for securities fraud actions filed in federal court. *Id.; see* H.R. Conf. Rep. No. 104–369, available in 1995 WL 709276 (1995).

---

**7.** Although all Ten Actions were removed to the Northern District of Mississippi, one action, *Beasley, et al. v. Ebbers, et al.*, 03 Civ. 4491, was transferred to a United States District Court judge for the Southern District of Mississippi because certain plaintiffs were former employees of the Northern District court system. *Beasley*, however, retained a Northern District docket number.

**8.** Although the defendants also removed the Ten Actions to federal court pursuant to SLUSA, it is unnecessary to consider that basis for federal jurisdiction because, as already described, there is an independent basis for removal and federal jurisdiction over the Ten Actions under "related to" bankruptcy jurisdiction:

The PLSRA, however, "proved ineffective in actual practice to prevent litigation of meritless suits." *Spielman,* 332 F.3d at 123.

Faced with the hurdles presented by the PSLRA, claimants simply abandoned federal court and filed suit in state court, alleging state securities law claims. *See Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107–08 n. 4 (2d Cir.2001) (citing Pub.L. No. 105–353 § 2(2)).[9] "SLUSA was enacted to close the loophole by mandating federal courts as the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Spielman,* 332 F.3d at 123 (citation omitted); *see* 15 U.S.C. §§ 77p(b)-(c); 15 U.S.C. §§ 78bb(f)(1)(A) and (f)(2).[10]

The statute's findings and legislative history reflect Congress' clear purpose to provide for exclusive federal jurisdiction over a broad range of securities class actions. *See* H.R. Conf. Rep. 105–83, available in 1998 WL 703964, at *13 (1998). Congress specifically directed the courts to interpret SLUSA in an expansive fashion. The Senate Banking Committee Report on SLUSA states:

> [W]hile the committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, *it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.*

S.Rep. No. 105–182, at 8 (1998) (emphasis supplied). The plain language of SLUSA, its legislative history, and the "larger statutory context in which SLUSA resides" demonstrate "that Congress intended to provide national, uniform standards for the securities markets and nationally marketed securities." *Lander,* 251 F.3d at 111.

### 2. SLUSA's Preemption Provisions

SLUSA's preemption provision provides, in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging ... a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security....

15 U.S.C. § 78bb(f)(1)(A). SLUSA's removal provision makes removable any class action preempted by 15 U.S.C.

---

9. When enacting SLUSA, Congress found that (1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits; (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts; (3) this shift has prevented the Act from fully achieving its objectives; (4) State securities regulation is of continuing importance, together with Federal regulations of securities, to protect investors and promote strong financial markets; and (5) in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objective of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits. Pub.L. No. 105–353 §§ 2(1)-(5).

10. SLUSA contains two identical preemption and removal provisions; one is found at 15 U.S.C. § 77p(b) and the other is found at 15 U.S.C. § 78bb(f). The former applies to remedies available under the Securities Act of 1933; the latter applies to remedies available under the Securities Exchange Act of 1934.

§ 78bb(f)(1)(A). *See* 15 U.S.C. § 78bb(f)(2).

SLUSA provides for complete preemption of those actions covered by its provisions.

> Congress could not have spoken more clearly. The clear and unambiguous language convinces us that *SLUSA was intended to completely preempt the field of certain types of securities class actions* by essentially converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims.

*Spielman,* 332 F.3d at 123 (emphasis supplied).

SLUSA does not, however, "preclude all state enforcement or private causes of action in securities fraud cases." *Id.* Under SLUSA, a securities action is preempted only if four conditions are satisfied: (1) the action is a "covered class action," (2) the claims are based on state law, (3) the action involves a "covered security," and (4) the claims allege a misrepresentation or omission of material fact "in connection with the purchase or sale" of the security. 15 U.S.C. 77p(b); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 189 F.Supp.2d 14, 17 (S.D.N.Y.2001) (citing 15 U.S.C. §§ 78bb(f)(1) and (2)). It is undisputed that the Bell Action is based on Mississippi state law, that plaintiffs' allegations involve a "covered security" that was listed on major stock exchanges; and that plaintiffs allege misrepresentations in connection with their purchases and sales of stock. Thus, the only dispute is whether this action is a "covered class action."

SLUSA defines a "covered class action" as:

(i) any *single lawsuit* in which—

(I) damages are sought *on behalf of more than 50 persons or prospective class members,* and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members, or

(ii) *any group of lawsuits filed in or pending in the same court* and involving common questions of law or fact, in which—

(I) damages are sought *on behalf of more than 50 persons; and*

(II) *the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.*

15 U.S.C. § 78bb(f)(5)(b) (emphasis supplied). The text of SLUSA also contains a "Rule of Construction" for the term "covered class action." This section states "[n]othing in [the definition of a covered class action] shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action." 15 U.S.C. §§ 77p(f)(2)(D) & 78bb(f)(5)(F).

The defendants contend that the Bell Action (and the remainder of the Ten Actions) are a "covered class action" because either they are a "single lawsuit" under subsection (i) of this definition, or a "group of lawsuits" as defined in subsection (ii). Both arguments require resort to the canons of statutory construction.

### 3. The Canons of Statutory Construction

█ It is well established that statutory construction must begin with "the plain text, and, where the statutory language provides a clear answer, it ends there as well." *Raila v. United States,* 355 F.3d 118, 120 (2d Cir.2004)(citing *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Whether the meaning of the statute is plain or ambiguous "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also Raila,* 355 F.3d 118, 120; *Saks v. Franklin Covey Co.,* 316 F.3d 337, 345 (2d Cir.2003). A court must "give effect, if possible, to every clause and word of a statute." *State St. Bank & Trust Co. v. Salovaara,* 326 F.3d 130, 139 (2d Cir.2003)) (citation omitted); *see also Auburn Housing Auth. v. Martinez,* 277 F.3d 138, 144 (2d Cir.2002).

█ Legislative history should only be used in determining the meaning of the statute when there is ambiguity. *Reves v. Ernst & Young,* 507 U.S. 170, 183–184, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *United States v. Dauray,* 215 F.3d 257, 264 (2d Cir.2000); *Auburn Housing Auth.,* 277 F.3d at 143–44. It remains true, however, that the

> strong presumption that the plain language of the statute expresses congressional intent may, in limited circumstances, be rebutted when a contrary legislative intent is clearly expressed.

*Lander,* 251 F.3d at 110 (citation omitted).

In interpreting SLUSA itself, courts have looked beyond the text of SLUSA when they have found the text to be ambiguous. *See Spielman,* 332 F.3d at 133 (Newman, J., concurring) (recognizing that some courts have looked to other federal statutes in construing the "in connection with" requirement in SLUSA); *Winne v. The Equitable Life Assurance Society of the United States,* No. 03 Civ. 1689(GEL), 2003 WL 22434215, at *4–6 (S.D.N.Y. Oct. 27, 2003) (finding that certain variable annuities are "covered securities" and interpreting the phrase "in connection with").

█ On the other hand, courts in this circuit have consistently rejected plaintiffs' attempts through artful pleading to avoid the clear precepts of SLUSA and its preemption of state law securities claims for damages. As the Second Circuit commanded in *Spielman,* the "district court must examine the complaint to determine whether the *substantive* requirements [of SLUSA] have been satisfied." *Spielman,* 332 F.3d at 124 (emphasis supplied). *See Dacey v. Morgan Stanley Dean Witter & Co.,* 263 F.Supp.2d 706 (S.D.N.Y.2003) (breach of contract claim preempted); *Winne,* 2003 WL 22434215, at *7–9 (negligence claim preempted); *In re Worldcom Inc.,* 263 F.Supp.2d 745, 770 (S.D.N.Y. 2003) (DLC) (negligence claim preempted); *Gibson v. PS Holding Group, Inc.,* No. 00–CV–0372 (RBB), 2000 WL 777818, at *3 (S.D.Cal. June 14, 2000)(restitution and equitable relief claims preempted).

### 4. Any Single Lawsuit on Behalf of More Than 50 Persons

█ The defendants contend that the Ten Actions are a "single lawsuit" as defined by SLUSA. 15 U.S.C. § 78bb(f)(5)(b)(i). It is undisputed that "questions of law or fact common to" the plaintiffs named in the Ten Complaints "predominate" over any question affecting those plaintiffs. *Id.* Neither *Bell* nor any of the other of the Ten Actions, however, is brought on behalf of 50 or more persons. As noted, the number of plaintiffs in each action ranges from five to forty-eight. The question, therefore, is whether the

identical complaints filed in the ·Ten Actions can constitute a "single lawsuit."

There is nothing ambiguous about the phrase "single lawsuit" in SLUSA's definition of a covered class action. A separate SLUSA provision addresses those circumstances in which a "group" of lawsuits can be considered a "covered class action". 15 U.S.C. § 78bb(f)(5)(b)(ii). If the term "single lawsuit" were meant to encompass more than one lawsuit filed by different plaintiffs, there would have been no reason for Congress to have identified this additional category of a "covered class action." Defendants have also failed to show that Congress clearly intended the "single lawsuit" category to apply to separately filed lawsuits.

■ Thus, even though collectively the Ten Actions are brought on behalf of well over 50 persons, and are identical in every material respect, by filing these suits separately, plaintiffs have managed to avoid falling into the "single lawsuit" category of a SLUSA "covered class action." The existence of a calculated strategy to avoid SLUSA preemption does not, by itself, permit a finding a preemption. The Fifth Circuit had occasion to comment on this issue in the context of upholding a district court's power to enjoin disruptive state court litigation. In *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir.2002), a law firm that represented over 750 plaintiffs bringing state securities law claims against defendants associated with Enron, "artfully avoided the Securities Litigation Uniform Standards Act by filing lawsuits in counties across State of Texas that are not denominated class actions and each with fewer than 50 plaintiffs." *Id.* at 302. Plaintiffs' counsel had obtained *ex parte* temporary restraining orders in state court that either duplicated relief already granted by the federal district court managing the consolidated Enron securities litigation, or, in one instance, obtained relief

that the district court had denied. *Id.* at 303. The ·*Newby* court found that the All Writs Act permitted the district court to enjoin plaintiffs' counsel from filing future state court actions without its permission. *Id.* Nonetheless, the Fifth Circuit observed in *dicta* ·that such injunctions could not be based "solely" on the efforts of plaintiffs' counsel ·efforts to avoid SLUSA. *Id.* The *Newby* court stated, "[w]e do not question the. filing of suits tailored to avoid federal jurisdiction. Nor do we countenance any preemptive federal dominion. The parallel exercise of state and federal sovereignty is inherent .in our government of dual sovereignty." *Id.*

### 5. A "Group of Lawsuits"

■ The defendants contend the Bell Action must be dismissed because the Ten Actions constitute a."covered class action" under the second prong of the SLUSA test: the "group of lawsuits" category. A covered class action includes a "group of lawsuits filed in or pending in the same court" in which damages are sought on behalf of more than 50 persons and the lawsuits are "joined, consolidated, or otherwise proceed as a single ·action for any purpose." 15 U.S.C. § 78bb(f)(5)(b)(ii).

It is uncontested that, taken together, the Ten Actions are brought on behalf of more than 50 persons; a total of 293 plaintiffs have filed precisely the same ·claims under Mississippi law. Nor can there be any question that the Ten Actions involve common questions ·of fact, since the complaints are verbatim copies of one another. The parties dispute, however, whether the lawsuits were filed in or are pending "in the same court" and whether the ten suits are "joined, consolidated, or otherwise pro-. ceed as a single action for any purpose."

### a.· Filed or Pending in the Same Court

The Ten Actions are currently pending in the same court, and have been so pend-

ing at least since their removal from state court. They were each removed on the basis that they were related to the World-Com bankruptcy. When pre-trial proceedings in this Court are concluded, the Ten Actions will be returned to the United States District Court for the Northern District of Mississippi for trial.

The defendants also argue that the Ten Actions were "filed" in the same court because all of the actions were filed in the Mississippi Circuit Court, the Mississippi trial court of general jurisdiction. They contend that the Circuit Court in each county should be considered a single court because, among other reasons, the Circuit Court was established by a single statute. Since it is clear that the Ten Actions are pending in the same court, it is unnecessary to reach this alternative ground for satisfying one of the SLUSA requirements.

### b. *Proceeding As a Single Action*

The Ten Actions also satisfy the additional SLUSA requirement that they be "joined, consolidated, or otherwise proceed as a single action." When the Ten Actions were transferred to this Court, they were consolidated for pretrial purposes, a decision that the plaintiffs in these actions did not oppose. The Ten Actions will therefore remain consolidated before this Court for the entirety of pre-trial proceedings and return to the Northern District of Mississippi for trial.[11]

In a similar vein, the Ten Actions are unquestionably "proceed[ing] as a single action for any purpose." As stated earlier, the plaintiffs' court filings are exact replications or simple joinders to each others' papers. On at least two occasions in this Court, only one document was submitted on behalf of all the plaintiffs in the Ten Actions.

■ Plaintiffs argue that the "group of actions" category of "covered class actions" is only satisfied for the purposes of SLUSA preemption when lawsuits proceed as a single action in *state* court. Plaintiffs' argument is without merit. The text of the SLUSA statute does not require that the actions be pending in the same *state* court or be joined, consolidated, or otherwise proceed as a single action in *state* court. It reads, "any group of lawsuits filed in or pending in the *same court* . . . in which . . . the lawsuits are joined, consolidated, or otherwise proceeds as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(b)(ii) (emphasis supplied).

The definition of a covered class action does not hinge on any action occurring in a state court because SLUSA was explicitly intended to cover lawsuits filed or pending in state *or* federal court. The statute provides in this regard, "Class Action Limitations.—No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or *Federal* court by any private party. . . ." 15 U.S.C. § 77p(1)(b) (emphasis supplied). Here, there is federal bankruptcy jurisdiction over the Ten Actions and they will remain in federal court for all purposes. It bears emphasis that this is not a case in which the Ten Actions were removed only under SLUSA and are proceeding and consolidated in federal court solely because of SLUSA. In other words, a removal pursuant to SLUSA is not being used to bootstrap a finding of SLUSA preemption.

Plaintiffs point to language in SLUSA that "[n]othing in [the definition of a cov-

---

**11.** Should the Ten Actions proceed to trial, there is every expectation that they would be consolidated or joined for trial as well. Any other course of action would result in an extraordinary waste of judicial resources and exponentially and unnecessarily increase the burden on and expense for the parties.

ered class action] shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action." 15 U.S.C. §§ 77p(f)(2)(D) & 78bb(f)(5)(F). This passage, and other SLUSA provisions, simply underscore the explicit determination by Congress that SLUSA not change the "current treatment of individual lawsuits," or the enforcement power of state security regulators. Pub.L. No. 105–353 §§ 2(5). This passage does not require that any court action that results in lawsuits proceeding as a single action occur only in state court. To read this passage as the plaintiffs suggest would create an inconsistency with the statutory directive quoted above, to wit, that "no covered class action ... may be maintained ... in Federal court."

Second, plaintiffs claim that certain portions of the Senate Banking Committee report on SLUSA change the plain meaning of the statute. The relevant portion of the report cited by the plaintiffs states

> The Committee does not intend for the bill to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant. However, the provisions of the bill would apply where the court orders that the suits be joined, consolidated, or otherwise proceed as a single action *at the state level.*

S. Rept. 105–182 at 7–8 (emphasis supplied). Far from assisting plaintiffs, this passage underscores congressional intent to preempt state court litigation whenever separately filed suits are consolidated, even where the suits are "bona fide individual actions." While the passage refers to consolidation at "the state level," there is nothing to indicate that the Senate Banking Committee was intending by that reference to make any pointed distinction

in this regard between a federal and state court action. It will, in all likelihood, be the more frequent occurrence that the consolidation that triggers SLUSA preemption occurs in state court. There is nothing, however, in the statute or the legislative history for the statute that indicates that consolidation in federal court cannot trigger preemption. To the contrary, as already noted, the statute covers actions filed in federal court as well as state court.

Plaintiffs also cite an unreported decision, *American National Insurance Co. v. J.P. Morgan & Co.,* No. 6–02–0299 (S.D.Tex. Aug. 9, 2002), for the proposition that the group of lawsuits must have been consolidated in state court in order for SLUSA preemption to take effect. *American National* was a single state action filed on behalf of eight plaintiffs. It was consolidated with Enron-related securities actions following removal to federal court. The court denied a motion to remand, finding that the removal was proper because the action was "related to" the Enron bankruptcy. In *dicta,* the court observed that SLUSA did not provide a basis for removal since the consolidation of the eight plaintiff single action with the other Enron-related litigation already in pending federal court following removal did not convert the lawsuit into a "covered class action" under SLUSA. Unlike *American National,* here there is not one action on behalf of eight plaintiffs, but Ten Actions on behalf of 293 plaintiffs. The Ten Actions are appropriately considered a "group of lawsuits" under SLUSA. It is the consolidation of the Ten Actions through the May 28 Order, and the fact that they are "proceed[ing] jointly as a single action for any purpose," that creates SLUSA preemption, not the consolidation of the Bell Action with the other World-Com class and Individual Actions being litigated before this Court.

### 6. *Judicial Estoppel*

 Plaintiffs argue that the doctrine of judicial estoppel prevents the defendants from arguing that consolidation of the Ten Actions for pre-trial purposes in this Court converts the Ten Actions into a "covered class action" preempted by SLU-SA. Judicial estoppel is a "discretionary doctrine" that "precludes a party that successfully maintained a particular position in one legal proceeding, from assuming a contrary position in a later proceeding solely because of a change in interest." *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Intern. Assoc., Local 38*, 288 F.3d 491, 504 (2d Cir.2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). "[A] party requesting judicial estoppel must demonstrate both that (1) the party against whom estoppel is sought has pursued an inconsistent factual position in an earlier proceeding, and (2) this prior inconsistent position was somehow adopted by the first court." *Mulvaney*, 288 F.3d at 504. "There must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel." *Wight v. Bankamerica Corp.*, 219 F.3d 79, 90 (2d Cir.2000) (citation omitted).

 The defendants argued in their opposition to plaintiffs' motion before the MDL Panel to vacate the conditional transfer order, that consolidation of the plaintiffs' actions would benefit the plaintiffs themselves. Specifically, the defendants' submission stated,

Transfer of this action to the Southern District of New York will obviate the need for the defendants, their counsel and witnesses to divide their time and resources among distant district courts in which plaintiffs allege the same core facts. *Plaintiffs would also benefit from coordinated or consolidated pretrial proceedings,* as they could work together in the centralized pretrial proceeding, rather than duplicating efforts in the myriad other actions.

(emphasis supplied).

The defendants have not taken inconsistent factual positions. Their argument to the MDL Panel was not a factual assertion, it was an argument. Nor is their argument now a "factual position;" it is an argument that SLUSA preemption applies to plaintiffs' causes of action. Moreover, it is entirely consistent to argue on the one hand that any litigation concerning World-Com securities claims should be pursued in a single venue, and on the other hand, to assert that the Ten Actions are preempted by federal law and should be dismissed.[12] *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir.2000) (a party that had voluntarily participated in litigation in a foreign court was not barred from challenging the impartiality of those courts).

"Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight*, 219 F.3d at 89. Its purpose is "to protect the integrity of the judicial process." *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808 (citation omitted). The defendants' statements to the MDL Panel do not implicate the concerns to which the doctrine of judicial estoppel is addressed.

---

12. Plaintiffs cite *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), in support of their judicial estoppel argument. This case is inapposite. In *New Hampshire*, the state of New Hampshire was estopped from asserting that a river boundary ran in a certain place when they had agreed in a 1970s dispute with the same defendant, the state of Maine, that the boundary was in a different location. *Id.* at 751–52, 121 S.Ct. 1808.

### 7. Dismissal With Prejudice

Plaintiffs request dismissal "without prejudice" in order to prosecute their claims "in state court in a form not coming within the ambit of SLUSA." Specifically, they request the right to pursue their state law claims "individually."

The filing of 293 separate lawsuits would not cure any of the deficiencies identified in this Opinion. SLUSA would still bar the actions. Dismissal with prejudice to the refiling of their claims is therefore appropriate.

### Conclusion

Defendants' motion to dismiss *Bell et al. v. Ebbers et al.*, 03 Civ. 4490, is granted. SO ORDERED.