REVISED SEPTEMBER 15, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-20043

_____

MARK NEWBY, ET AL;

                                                    Plaintiffs

v.

ENRON CORPORATION, ET AL;

                                                    Defendants

_____

FLEMING & ASSOCIATES LLP

                                                    Plaintiff-Appellant

v.

ANDREW S FASTOW; BANK OF AMERICA CORP; CREDIT SUISSE
FIRST BOSTON; BARCLAYS PLC; CANADIAN IMPERIAL BANK OF
COMMERCE; MERRILL LYNCH & COMPANY INC; JP MORGAN CHASE
& CO; LEHMAN BROTHERS HOLDINGS INC; BANC OF AMERICA
SECURITIES LLC; FINANCIAL INSTITUTION DEFENDANTS; BANK OF
AMERICA N.A.; JOHN A URQUHART; JP MORGAN SECURITIES INC,
formerly known as Chase Securities Inc; MERRILL LYNCH PIERCE
FENNER & SMITH INC; PERSHING LLC; ROBERT A BELFER; NORMAN
P BLAKE, JR; RONNIE C CHAN; JOHN H DUNCAN; WENDY L GRAMM;
ROBERT K JAEDICKE; CHARLES A LEMAISTRE; JOE H FOY; JOSEPH
M HIRKO; KEN L HARRISON; REBECCA MARK-JUSBASCHE; JOHN
MENDELSON; PAULO V FERRAZ PEREIRA; FRANK SAVAGE; JEROME
J MEYER; CHARLES E WALKER; CITIGROUP INC; KRISTINA
MORDAUNT; CREDIT SUISSE FIRST BOSTON, (USA) INC; CAMPSITE
LTD; JP MORGAN SECURITIES INC; CIBC INC; CIBC WORLD MARKETS
CORP; CITIBANK NA; CITICORP NORTH AMERICA; LEHMAN
BROTHERS INC; BARCLAYS CAPITAL INC; SALOMON BROTHERS
INTERNATIONAL LTD; CITICORP; JP MORGAN CHASE; CITIGROUP
GLOBAL MARKETS LTD; CITIGROUP GLOBAL MARKETS INC; ROYAL

BANK OF CANADA; ROYAL BANK OF SCOTLAND; NATIONAL WESTMINSTER BANK PLC; GREENWICH NATWEST LTD; GREENWICH NATWEST STRUCTURED FINANCE INC; ROYAL BANK HOLDING; ROYAL BK DS HOLDING; RBC DOMINION SECURITIES INC; RBC DOMINION SECURITIES LTD; RBC HOLDINGS (USA)

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:01-cv-03624

Before SMITH and PRADO, Circuit Judges, and LUDLUM[*], District Judge.

PRADO, Circuit Judge:

In December 2001, Enron Corporation filed for bankruptcy.  Seven years later, litigation involving the Enron collapse endures.  Today's decision presents another chapter in that story.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2001, Enron publicly announced that it had incurred a $683 million loss and was taking non-recurring charges of $1.01 billion after-tax in the third quarter of 2001.  That week, the Wall Street Journal published a series of articles revealing that Enron and related entities had engaged in various fraudulent transactions.  As a result, the price of Enron's stock plummeted, precipitating the decline of the company.

In late 2001, the Houston law firm of Fleming & Associates (the "Fleming Firm") filed seven securities-related lawsuits in Texas state courts on behalf of several hundred clients against various Enron-related defendants.  Pursuant to these suits, the Fleming Firm sought ex parte temporary restraining orders to prevent the defendants from destroying Enron-related documents.  Meanwhile,

---

[*] District Judge of the Western District of Texas, sitting by designation.

the district court, which already had jurisdiction over various Enron-related cases involving these parties as part of the Enron Multidistrict Litigation ("MDL") proceeding and the "Newby" consolidated cases, had already issued a similar order against the same defendants. Based on the Fleming Firm's conduct in seeking ex parte orders in state court, on February 15, 2002, the district court issued a memorandum and order enjoining the Fleming Firm from filing any new Enron-related actions without leave of the court (the "February 15, 2002, injunction"). This court affirmed the issuance of the injunction. See Newby v. Enron Corp., 302 F.3d 295, 302 (5th Cir. 2002) (Newby I). We held that the district court had the power to issue a "narrowly tailored" injunction under the All Writs Act, 28 U.S.C. § 1651, to "enjoin[] repeatedly vexatious litigants from filing future state court actions." Id. We noted,

> The district court in this case was attempting to rein in a law firm that represents over 750 plaintiffs . . . . The problem is Fleming's unjustified and duplicative requests for ex parte temporary restraining orders, without notice to lawyers already across the counsel table from Fleming and engaged in the prosecution and defense of virtually identical claims in federal suits.

Id.

Pursuant to the injunction, in October 2003, the Fleming Firm filed a motion for leave to file two Enron-related actions in state court and a motion to lift the injunction. The district court granted the motion for leave to file suit but denied the motion to lift the injunction. Meanwhile, on July 11, 2003, the district court issued a scheduling order in the Newby securities class action, and on July 5, 2006, the district court certified the class in Newby.[1]

---

[1] This court subsequently ordered the decertification of the Newby class. See Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc., 482 F.3d 372 (5th Cir. 2007), cert. denied, Regents of Univ. of Cal. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 128 S. Ct. 1120 (2008).

On October 14, 2005, the Fleming Firm moved for leave to file thirty-four lawsuits in Texas courts on behalf of approximately 1200 clients. The proposed defendants included several financial institutions and Enron outside officers and directors (this group comprises the Defendants-Appellees "Financial Institutions").[2] The Fleming Firm attached its proposed state court petitions to its motion for leave to file suit. The state court suits would allege seven state law causes of action: common law fraud and fraud-on-the-market, negligence, statutory fraud, aiding and abetting liability under the Texas Securities Act, civil conspiracy, aiding and abetting common law fraud, and negligent misrepresentation.

The district court denied the Fleming Firm's motion for leave to file suit. The court determined that the statute of limitations had run for all of the Fleming Firm's proposed state law claims and that no tolling doctrines applied. Therefore, the court concluded that it would be futile to grant the motion, as the Texas courts would dismiss the state law claims as time-barred. The Fleming Firm appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291, as the district court issued a final judgment denying the motion for leave to file suit. The district court had jurisdiction under 28 U.S.C. § 1331 because the Newby case involves federal securities law claims.

We review the district court's actions pursuant to the injunction it issued for an abuse of discretion. See Newby I, 302 F.3d at 301. We review de novo underlying questions of law, such as whether the statute of limitations has run

---

[2] The Fleming Firm has settled this case with some of the Defendants-Appellees, and this court has dismissed those parties from this case. Although many financial institutions are part of that settlement, for ease we still refer to the remaining Defendants-Appellees as the "Financial Institutions."

or whether equitable tolling applies. See In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000); FDIC v. Dawson, 4 F.3d 1303, 1308 (5th Cir. 1993).

## III. DISCUSSION

### A. Statutes of Limitations

The Fleming Firm seeks to bring seven causes of action in state court. The proposed state law claims for common law fraud and fraud-on-the-market (Count I), statutory fraud (Count III), and aiding and abetting common law fraud (Count VI) all have a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (common law fraud); id. § 16.004(a)(4) (statutory fraud); id. § 16.051 (aiding and abetting common law fraud). The proposed claims for aiding and abetting under the Texas Securities Act (Count IV) have a three-year statute of limitations. TEX. REV. CIV. STAT. ANN. art. 581-33(H). The claims for negligence (Count II), civil conspiracy (Count V), and negligent misrepresentation (Count VII) all have a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (negligence); Stevenson v. Koutzarov, 795 S.W.2d 313, 318 (Tex. App. 1990) (civil conspiracy); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003, Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 221 n.9 (Tex. 2003) (negligent misrepresentation). Given that the Fleming Firm's clients had notice of their claims on October 17, 2001, the longest statute of limitations at issue here (four years) would have expired on October 17, 2005, unless a tolling doctrine applies.

The Fleming Firm submitted its motion for leave to file the state court suits on October 14, 2005. The district court held that as of this date, without tolling, the statutes of limitations would bar all but the claims with a four-year limitations period. Further, the court concluded that without tolling, Texas law would also bar the claims that have a four-year statute of limitations because the Fleming Firm did not file an original petition with a state court clerk pursuant to Texas Rule of Civil Procedure 22 before the limitations period

expired. The district court noted that under its Local Rule 7.3, the motion for leave to file suit would not be ripe for a ruling until twenty days after the Fleming Firm filed the motion, or until November 3, 2005, meaning that the Fleming Firm could not have filed the state court suits within the statute of limitations even if the court had granted leave.[3] Accordingly, the court held that granting leave to file any of the proposed claims would be futile.

Contrary to the Fleming Firm's suggestion, the district court did not violate any notions of federalism by determining whether a Texas state court would dismiss the Fleming Firm's suits based on the state's statute of limitations. The district court has jurisdiction over a multitude of claims under the MDL and is intimately involved in the many facets of the litigation surrounding the Enron collapse. All of the parties in the Fleming Firm's proposed state law claims are also before the district court in similar proceedings. It was not outside of the scope of the district court's duties to determine if the Texas courts would immediately dismiss the proposed state law claims involving parties already before the district court. Further, federal courts often consider issues involving a state statute of limitations. See, e.g., Vaught v. Showa Denko K.K., 107 F.3d 1137, 1147 (5th Cir. 1997) (analyzing the Texas rule for tolling the state statute of limitations when the plaintiff also was involved in a federal class action).

In determining that it had the authority to deny the motion for leave based on the futility of the state law claims, the district court analogized to the rules for granting leave to file a motion to amend under Federal Rule of Civil Procedure 15(a). That rule states that a court should freely give leave to amend a pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). However, a court

---

[3] The Southern District of Texas's Local Rule 7.3 states, "Opposed motions will be submitted to the judge twenty days from filing without notice from the clerk and without appearance by counsel."

need not grant leave to amend when the filing would be futile because the proposed claims are time-barred. See FDIC v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994).

The Fleming Firm argues that the district court incorrectly failed to incorporate the "relation-back" principle of Rule 15(c) into its analysis when the court used Rule 15(a) as an analogy. Rule 15(c) states that an amendment to a pleading relates back to the date of the original pleading when, inter alia, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). The Fleming Firm asserts that the district court should have determined that the proposed actions would be timely because the Fleming Firm attached the petitions to its motion for leave to file suit, and thus they would relate back to the date of filing (October 14, 2005, which was three days before the statute of limitations expired for some of its claims). The Fleming Firm also contends that the Texas state courts would apply Texas's analogous "relation-back" rule for motions to amend given that the federal court denied the motion for leave on the basis of the rules regarding motions to amend. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.068. Finally, the Fleming Firm argues that the filing of its motion for leave to file suit, accompanied by the thirty-four proposed petitions, served the purpose of a statute of limitations because it gave the defendants notice of the claims within the limitations period. See, e.g., Moore v. Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993) ("As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.").

Assuming, arguendo, that Rule 15(a) applies in this situation, the district court was correct to conclude that it would be futile to grant leave for the Fleming Firm to file the state court actions that have a two-year or three-year statute of limitations. That is, the state court would rule that these claims are time-barred, even with the benefit of a relation-back doctrine, because the Fleming Firm did not file its motion for leave to file suit before these statutes of limitations had expired.

The district court was incorrect, however, in denying the motion for leave to file suit for the claims that have a four-year statute of limitations. The court did not cite any authority for using its own local rules to dictate the state's filing date for purposes of Texas's relation-back principle. In effect, the district court was requiring the Fleming Firm either to file a motion for leave at least twenty days before the statute of limitations expired—or perhaps even earlier if the district court did not rule on the motion in time—or to violate the injunction by filing in state court within the limitations period. Cf. Schillinger v. Union Pac. R.R. Co., 425 F.3d 330, 334 (7th Cir. 2005) ("The logic underlying [using the date of filing for limitations purposes as opposed to the date the court rules on the motion] is that defendants are on notice of the amendment when the motion is filed and it would be unfair to plaintiffs if a trial court waited months or years to rule."). Thus, the district court should have allowed the Texas state courts to decide whether the filing of the state petitions relates back to the filing of the motion for leave to file suit (for the claims that have a four-year statute of limitations), meaning that these claims might not be futile. Because the Fleming Firm sought to file these claims before the statute of limitations expired, it is up to the state court to determine how to proceed. In sum, the district court improperly denied the motion for leave to file the claims involving common law fraud and fraud-on-the-market (Count I), statutory fraud (Count III), and aiding and abetting common law fraud (Count VI), because these claims

all have a four-year statute of limitations, and the Fleming Firm submitted its motion for leave to file suit before that limitations period expired.

B.    Tolling

As discussed above, the district court properly denied the motion for leave for the claims that have a two-year or three-year statute of limitations unless a tolling doctrine applies.    The Fleming Firm posits three possible tolling doctrines.  First, the Fleming Firm argues that the district court's scheduling order in the Newby MDL tolled the limitations period for its proposed claims. Second, the Fleming Firm argues that the February 15, 2002, injunction itself tolled the statute of limitations because it prevented the Fleming Firm from exercising its clients' legal remedies.  Finally, the Fleming Firm asserts that the tolling doctrine from American Pipe & Construction v. Utah, 414 U.S. 538 (1974) applies.  After a careful review, it is apparent that none of the Fleming Firm's arguments have merit.

1.    Newby MDL Scheduling Order

In its July 11, 2003 scheduling order in the Newby MDL case, the district court stated that "all other suits [except for those brought by plaintiffs who had decided to proceed under the Newby consolidated amended complaints] shall be stayed as to the filing of amended pleadings and/or responsive pleadings until the motions for class certification in Newby . . . are resolved by the Court, but discovery may proceed."   The district court did not rule on the Newby class certification until July 5, 2006.  The Fleming Firm argues that the district court admitted in its December 12, 2006 order involving other claims not subject to this appeal that it had intended to toll the statute of limitations for all claims in its July 11, 2003 scheduling order.  See In re Enron Corp., No. H-01-3624-CV, et al., 2006 WL 3716669, at *7 (S.D. Tex. Dec. 12, 2006) ("In issuing the July 11, 2003 scheduling order, . . . this Court fully intended to toll the statute of limitations from running in the Newby consolidated and coordinated cases from

9

entry of the order until it certified the class in Newby and gave plaintiffs in the consolidated and coordinated cases a schedule to opt out and to file motions for leave to amend . . . .").

In making its argument, however, the Fleming Firm misconstrues the district court's July 11, 2003 scheduling order. In that order, the district court was contemplating cases in which the plaintiffs had already filed a complaint. In particular, the court stated that its scheduling order operated to stay the cases as to the filing of "amended pleadings and/or responsive pleadings," not initial complaints. The December 12, 2006 order did not state anything to the contrary, simply noting that the July 11, 2003 order tolled the statute of limitations from running in the Newby consolidated and coordinated cases. Id. Thus, the district court intended to stay the cases in which the plaintiffs had already filed a complaint, not toll the statute of limitations for claims not yet before the court. Accordingly, the district court did not toll the Fleming Firm's proposed state law claims, which the Fleming Firm had not yet filed.

### 2. February 15, 2002 Injunction

The district court's February 15, 2002 injunction, preventing the Fleming Firm from filing state law claims without leave of the court, also did not toll the statute of limitations. Contrary to the Fleming Firm's argument, this order did not prevent the Fleming Firm from exercising its clients' legal remedies. See Jackson v. Johnson, 950 F.2d 263, 265 (5th Cir. 1992) (stating that "where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right"). The injunction simply required the Fleming Firm to take another step and seek judicial approval before proceeding in state court. The Fleming Firm still could bring its claims in an attempt to vindicate its clients' legal rights, so long as it first filed a motion for leave to file suit. In fact, this is exactly what occurred in

October 2003 when the Fleming Firm successfully moved for leave to file two actions in state court. Therefore, this argument is without merit.

### 3. American Pipe Tolling

In American Pipe, the Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. The policy behind this decision is that a contrary rule would induce potential class members to file protective motions to intervene or join in the event that the court denied class certification, simply to preserve their claims. See id. at 553-54. The Court clarified the scope of American Pipe in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983), ruling that a class action tolls a statute of limitations for all asserted members of the class, not just potential intervenors.

The Texas courts generally have adopted the American Pipe tolling doctrine for state class actions. In Grant v. Austin Bridge Construction Co., 725 S.W.2d 366, 370 (Tex. App. 1987), the Texas Court of Appeals held that "even though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as to all purported members of the class." However, the Texas courts have not extended this holding to allow a federal class action to toll a state statute of limitations. See Bell v. Showa Denko K.K., 899 S.W.2d 749, 757-58 (Tex. App. 1995) (refusing to apply American Pipe tolling to a state law mass personal injury suit based on a federal class action). The court in Bell distinguished the decision in Grant in part by noting that the state rules for tolling are based on state, not federal, law. See id. at 757 ("We do not agree that American Pipe operates to toll our state statute of limitations."). This court has summarized Texas's approach to the American Pipe tolling doctrine as follows:

> A state (Texas) class action that raises property damage-type claims tolls a Texas statute of limitations pending a certification ruling. And, consistent with our understanding of this Texas tolling rule, it is unclear whether, under this rule, a federal class action filed in Texas or in any other State would ever toll a Texas statute of limitations, regardless of the type of claims raised.

Vaught v. Showa Denko K.K., 107 F.3d 1137, 1147 (5th Cir. 1997). But see Prieto v. John Hancock Mut. Life Ins. Co., 132 F. Supp. 2d 506, 518 (N.D. Tex. 2001) (surmising that Texas courts would "interpret the class action tolling rule of Grant and Bell as extending to all property damage claims . . . regardless of the forum in which the class action was filed"); In re Norplant Contraceptive Prods. Liab. Litig., 173 F.R.D. 185, 189 (E.D. Tex. 1997) (holding that a federal class action would toll the state statute of limitations when the class action gives the defendant "fair notice of the type and potential number of claims against it").

Here, the Fleming Firm contends that the federal Newby class action tolled all state law claims based on American Pipe. This is a weak argument given this court's prior language in Vaught and the Texas Court of Appeals' holding in Bell. In Vaught, we questioned whether Texas would "ever" allow tolling for a state claim based on a federal class action. See Vaught, 107 F.3d at 1147. Our doubt was premised, in part, on Bell, where the Texas court did not allow a federal class action to toll the state statute of limitations and made clear that the state tolling rule differs from the federal rule. See Bell, 899 S.W.2d at 757-58. Additionally, Grant does not apply, because that case involved whether a Texas class action would toll a Texas individual action. See Grant, 725 S.W.2d at 370. Therefore, the district court correctly concluded that, based on our understanding of Texas law, the Texas courts likely will not extend American Pipe tolling to this situation. Nevertheless, the Financial Institutions are free to pursue this argument with the Texas courts, so the state courts can clarify the reach of Texas's tolling rules.

## C.    Scope of Injunction

In another attempt to save all of its proposed state law claims, the Fleming Firm argues that the district court exceeded the purposes of the February 15, 2002 injunction by denying its motion for leave.  Specifically, the Fleming Firm asserts that we had previously constrained the district court's actions when we affirmed the issuance of the injunction.  See Newby I, 302 F.3d at 302.  In that case, we noted that the purpose of the injunction was to rein in the Fleming Firm's conduct in making "unjustified and duplicative requests for ex parte temporary restraining orders" in a state court case when the same lawyers were already opposing each other in similar federal suits.  Id.  The Fleming Firm posits that when we reminded the district court that it had "a duty to consider [the Fleming Firm's] requests for leave to file suit in state court," we envisioned that the district court would grant leave so long as the proposed state court suits would not produce the same type of vexatious conduct.  In sum, the Fleming Firm argues that the district court's action here should have been "purely ministerial" regarding whether the Fleming Firm's proposed state law suits would violate the purpose of the injunction, that is, to stop the filing of ex parte orders.

However, the Fleming Firm reads too much into our opinion in Newby I. We never directed the district court to consider only whether a future lawsuit would involve ex parte orders when deciding whether to grant leave.  Id. at 303. Instead, we merely stated that the district court had a duty to consider any requests for leave and could not deny leave solely based on the Fleming Firm's desire to avoid federal jurisdiction (by tailoring its suit in a way that would avoid the preemptive effects of the Securities Litigation Uniform Standards Act).  See id.  Nowhere did we indicate that the district court had to contemplate the initial catalyst for the injunction when considering a motion for leave.  Constraining the district court to the original purposes of the injunction would give the

injunction little effect, as it would prevent the district court from stopping other vexatious conduct that is not precisely the same as that listed in the injunction. Our decision in Newby I did not go this far. As such, the Fleming Firm's argument that the district court exceeded the scope of the February 15, 2002 injunction is without merit.

D.    SLUSA Dismissal

The Financial Institutions present an alternative argument, suggesting that this court should affirm the district court in its entirety because the Securities Litigation Uniform Standards Act (SLUSA) would preempt all of the proposed state law claims. SLUSA provides, "No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging" a securities claim. 15 U.S.C. § 77p(b). The Act defines a "covered class action" as, inter alia, "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." Id. § 77p(f)(2)(A)(ii). If a state law case is a "covered class action" under SLUSA, it is subject to removal and subsequent dismissal as preempted. Id. § 77p(c).

The Financial Institutions argue that the thirty-four proposed lawsuits constitute a "covered class action" because, in the aggregate, they assert claims on behalf of more than fifty persons, and the lawsuits would proceed as a single action in the state court. The Financial Institutions note that the thirty-four proposed petitions are identical except for the plaintiffs' names, and the proposed suits each include fewer than fifty plaintiffs solely to defeat preemption under SLUSA. The Financial Institutions speculate that if the Fleming Firm were to file the thirty-four petitions in state court, the Texas courts would consolidate them under Texas Rule of Civil Procedure 174, which would then

allow the Financial Institutions to remove the cases pursuant to SLUSA. The Financial Institutions also assert that the cases still would "otherwise proceed as a single action" for purposes of discovery even if the Texas courts do not consolidate the cases.

However, the Financial Institutions' argument falls apart when recognizing that a party is allowed to tailor a suit to avoid federal jurisdiction. See Newby I, 302 F.3d at 303. As we stated when affirming the district court's February 15, 2002 injunction, "the district court cannot predicate future denials of leave solely upon [the] Fleming[] [Firm's] desire to avoid the reach of [SLUSA]." Id.; see also S. REP. NO. 105-182 (1998), 1998 WL 226714, at *7-8 (noting that Congress did not intend SLUSA preemption "to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant"). Additionally, the Financial Institutions' premise rests on an assumption that the Texas courts will consolidate the cases, but there is no evidence that the Texas courts will order consolidation. Predicting that the Texas courts necessarily will consolidate would infringe upon notions of federalism. See, e.g., Newby I, 302 F.3d at 303 ("The parallel exercise of state and federal judicial power is inherent in our government of dual sovereignty."). The Texas courts should be allowed to decide in the first instance how to manage their dockets with regard to the Fleming Firm's claims that are not time-barred.[4]

---

[4] This case is unlike the situation the district court faced in its December 12, 2006 order, where the district court dismissed nine state law claims that the Fleming Firm had filed because they constituted a "covered class action" under SLUSA. See In re Enron, 535 F.3d 325, 333 (5th Cir. 2008). In that case, the Fleming Firm previously had asserted its claims in state court and then (after removal based on bankruptcy jurisdiction and consolidation in the federal court) attempted to amend its federal complaint to add these causes of action. See id. We agreed with the district court that SLUSA preempted the state law claims. Id. at 342. In contrast, here the Fleming Firm has not yet brought its claims in either state or federal court, meaning that the suits have not been "filed" and are not "pending" in any court. See 15 U.S.C. § 77p(f)(2)(A)(ii); see also id. § 78bb(f)(5)(F) ("Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should

Therefore, we reject the Financial Institutions' alternative argument for affirming.

## IV. CONCLUSION

The district court properly denied the motion for leave to file suit for the proposed state law claims that have a two-year or three-year statute of limitations. No tolling doctrine applies. Therefore, filing these claims would be futile because the Texas courts would dismiss the lawsuits as time-barred. However, the district court incorrectly denied the motion for leave to file suit with respect to the claims that have a four-year statute of limitations. The Texas courts should be allowed to decide whether, under Texas law, the filing of the state court petitions relates back to the filing of the motion for leave to file suit. As such, we affirm in part, reverse in part, and remand to the district court to grant the motion for leave to file the claims for common law fraud and fraud-on-the-market, statutory fraud, and aiding and abetting common law fraud.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

---

be joined, consolidated, or otherwise allowed to proceed as a single action.").