# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 5, 2011

No. 10-10336

Lyle W. Cayce
Clerk

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff - Appellee

RALPH S. JANVEY,

Appellee

v.

STANFORD INTERNATIONAL BANK LIMITED, et al.,

Defendants

JANE ANN SASSER; LINDA K. OGE; MARK D. OGE,

Movants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-298

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10336

This is an appeal from the District Court's denial of the Appellants' motion for a modification of an injunction[1] to allow Appellants to proceed with their respective arbitrations. We affirm.

As part of an enormous alleged Ponzi scheme perpetrated by the Stanford companies, financial advisors sold innocent investors essentially worthless certificates of deposit ("CD's") issued by Stanford Bank in Antigua. In February 2009, the SEC filed suit against Allen Stanford and all related Stanford entities. The District Court appointed a Receiver, Ralph S. Janvey, to marshal, conserve, hold, manage and preserve the value of the receivership estate. Additionally, the District Court issued an injunction against all judicial, administrative, or other proceedings in other fora against any Stanford entities.

Appellant Jane Ann Sasser ("Sasser"), a retired, widowed school teacher, invested her entire retirement, approximately $550,000, in Stanford CD's. Those CD's are now virtually worthless. Pursuant to her contract with her financial advisor, Sasser filed a claim for arbitration with the Financial Industry Regulatory Authority ("FINRA") against her Stanford financial advisor, Robert Lenoir ("Lenoir"), and his supervisor, Douglas McDaniel ("McDaniel"). Both Lenoir and McDaniel have accounts that are the subject of the receivership suit. Similarly, Appellants Linda and Mark Oge (the "Oges") invested a substantial amount of their retirement savings, approximately $250,000, in now-worthless Stanford CD's. The Oges also filed a claim with FINRA against their financial advisors, James Keith Cox ("Cox") and Arlen R. Blackwell ("Blackwell"). The Receiver has brought suit against Cox for over $1 million.

FINRA refunded Appellants' filing fees and stated that the arbitrations could not proceed absent leave of court in the receivership suit. The Appellants moved the District Court to modify the stay to allow them to pursue their

---

[1] The motions were entitled motions to compel arbitration. However, they are, in essence, motions to modify the injunction, so we denominate them thusly.

2

No. 10-10336

arbitrations against their financial advisors.  The District Court denied the motions.  The Appellants timely appealed, and we have jurisdiction to review a district court's refusal to modify an injunction pursuant to 28 U.S.C. § 1292(a)(1).

"We review the district court's actions pursuant to the injunction it issued for an abuse of discretion." *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008).  "In performing that review, findings of fact that support the district court's decision are examined for clear error, whereas conclusions of law are reviewed *de novo.*" *Affiliated Prof. Home Health Care Agency v. Shalala*, 164 F.3d 282, 284–84 (5th Cir. 1999).

Appellants first argue that the District Court's injunction violates their procedural due process right to arbitration.  It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions.  *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985); *SEC v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980) ("*Wencke I*") ("It is especially appropriate in an action like this one that the federal courts have the power, if necessary, to take control over an entity and impose a receivership free from interference in other court proceedings.").  Since a district court has the power to enjoin other courts, it follows that it has the power to enjoin arbitration, which is after all a private contract right between two parties rather than a constitutionally guaranteed right like access to the courts.  The District Court's stay was properly justified by the enormity of the Receiver's task given the number of entities, countries, and dollars involved in the alleged Stanford Ponzi scheme.

Appellants next contend that the District Court abused its discretion when it denied their motion for modification of the stay to allow them to pursue their arbitrations against their financial advisors. To determine whether an exception should be made to a stay of proceedings in a case such as this, the court should

3

consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) (*Wencke II*).

The first factor essentially balances the interests in preserving the receivership estate with the interests of the Appellants. *See United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). The District Court found that the Appellants' desire for immediate arbitration—although understandable—was outweighed by the importance of maintaining control over the receivership estate for several reasons. First, the District Court found that the financial advisors at issue were, in many cases, parties to ancillary litigation already initiated by the Receiver. Recovery against one of them could deplete possible assets coming into the estate. Second, the District Court noted that it had not yet ruled on whether the insurance proceeds of any insurance policies, which could pay for awards against the advisors, were property of the estate. So, again recovery against the advisors could deplete the estate. Third, the District Court found it highly likely that the financial advisors would argue as a defense that the Stanford companies were at least partially responsible for the investors' losses. And last, the District Court found that the Receiver's ongoing duty to monitor and possibly intervene in ancillary actions would cost the estate in money and efficiency. The District Court held that the first factor weighed in favor of maintaining the stay.

We are not insensitive to the Appellants' arguments that given their financial situations, their need to recover funds immediately is paramount. However, the Receiver's task to marshal, preserve and conserve the receivership estate is as much for their benefit as for the benefit of all of the other investors—investors who also lost amounts of money that changed their lives.

No. 10-10336

Therefore, at this stage of the litigation, we agree with the District Court that the needs of the Receiver outweigh the substantial injury being suffered by the Appellants.

The District Court also weighed the second factor—the time in the course of the receivership—in favor of maintaining the stay. Timing in a receivership process is fact specific, based on the number of entities, the complexity of the scheme, and any number of other factors. *See Wencke II*, 742 F.2d at 1231–32; *SEC v. Universal Fin.*, 760 F.2d 1034, 1039 (9th Cir. 1985). At the time of the District Court's order, the receivership had been in place for one year. The District Court found that the alleged Ponzi scheme was complex and intricate, involving many entities and billions of dollars. Additionally, satellite litigation instigated by the Receiver on behalf of the estate was just beginning. Therefore, the District Court held that the receivership was in its early stages and that the interest of the Receiver in continuing to marshal and conserve the estate outweighed the Appellants' claims at this time.

For the last factor, the District Court was unable to make findings regarding the merits of the Appellants' claims. However, the court indicated a willingness to reweigh the factor once the evidence in the ancillary litigation revealed more facts regarding the financial advisors' knowledge and participation in the scheme. The *Wencke* factors acknowledge that, with time, the balancing between the parties may change, such that modifying the stay would be possible. And, the District Court's findings reflect that understanding. Based on the findings of the District Court, we cannot say that it abused its discretion in denying the Appellants' motion to modify.

AFFIRMED.

5