# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 8, 2012

Lyle W. Cayce
Clerk

No. 11-10355

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff

RALPH S. JANVEY,

     Appellee

v.

STANFORD INTERNATIONAL BANK LIMITED, ET. AL.,

     Defendants

v.

TRUSTMARK NATIONAL BANK,

     Intervenor - Appellant

v.

HP FINANCIAL SERVICES VENEZUELA C.C.A.,

     Intervenor - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-298

No. 11-10355

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This is one of many cases stemming from the purported Stanford Financial Ponzi scheme. Trustmark National Bank ("Trustmark"), a creditor of Stanford International Bank Limited ("Stanford"), appeals the decision of the district court allowing HP Financial Services Venezuela ("HPFS") to present a letter of credit to Trustmark for payment, but refusing to allow Trustmark to offset the funds from Stanford who is currently under the receivership of Ralph S. Janvey ("Janvey" or "the Receivership"). Because we hold that the district court did not abuse its discretion, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

This court has previously set forth the relevant background of this case in *Janvey v. Adams*, 588 F.3d 831, 833 (5th Cir. 2009):[1]

> This case arises out of an alleged multi-billion-dollar Ponzi scheme perpetrated by the Stanford companies ("Stanford"), a network of some 130 entities in 14 countries controlled by R. Allen Stanford. According to the SEC, the companies' core objective was to sell certificates of deposit ("CD's") issued by Stanford International Bank Limited in Antigua ("Stanford Bank"). Stanford achieved and maintained a high volume of CD sales by promising above-market returns and falsely assuring investors that the CDs were backed by safe, liquid investments. For almost 15 years, the Bank represented that it consistently earned high returns on its investment of CD sales proceeds, ranging from 12.7% in 2007 to 13.93% in 1994. In fact, however, the Bank had to use new CD sales proceeds to make interest and redemption payments

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] This is at least the fourth case involving the Stanford entities which has come before this court. *See SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. App'x 338 (5th Cir. 2011) ("*Stanford I*") and *SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. App'x 379 (5th Cir. 2011) ("*Stanford II*").

No. 11-10355

on pre-existing CDs, because it did not have sufficient assets, reserves and investments to cover its liabilities.

On February 17, 2009, the SEC commenced this lawsuit against the Stanford defendants. The district court appointed Ralph S. Janvey to serve as the Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the receivership order (the "Receivership Order").

Among these powers, the district court authorized Janvey to take and have complete and exclusive control, possession, and custody of the Receivership Estate. The district court also ordered that unless prior approval by the court is granted, creditors and all other persons are restrained and enjoined from:

(a)   Any act to obtain possession of the Receivership Estate assets;

(b)   Any act to create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate;

(c)   Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate;

(d)   The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate.

Before Stanford was placed into receivership, Trustmark issued letters of credit to several companies conducting business with Stanford. By issuing these letters, Trustmark became a secured creditor with set-off rights against cash collateral that Stanford had placed on deposit with Trustmark. One of the letters of credit was issued to HPFS in the amount  of $1,986,745 to secure

3

payment on a lease of computer equipment with Stanford. HPFS alleges that Stanford defaulted under the lease agreement.

On March 25, 2009, Janvey notified Trustmark that "[i]f Trustmark were to honor any draw request made by a beneficiary under any Letter of Credit and apply any Cash Collateral in order to satisfy the applicable Stanford-related entity's purported reimbursement obligation in respect of such draw, such action would be a violation of the [Receivership] Order." Nevertheless, HPFS presented its letter of credit to Trustmark on two separate occasions. Trustmark rejected both requests for payment and notified HPFS that presentment of the letter of credit may constitute a violation of the Receivership Order.

In June 2009, HPFS and Trustmark filed separate requests to intervene and to clarify or modify the stay. HPFS sought to clarify whether the Receivership Order enjoins or otherwise applies to draws under letters of credit issued by Trustmark. Trustmark sought "an order modifying, clarifying, or enforcing [the Receivership Order] as necessary to grant Trustmark authority to exercise its rights as a secured creditor" and "authority under Sections 10(a) and 10(b) of the [Receivership Order] to exercise its set-off rights against cash collateral." On January 5, 2010, the district court granted, in-part, both HPFS's and Trustmark's motions, allowing both parties to intervene. However, the district court withheld its ruling on the parties' other requests.

On March 31, 2010, the district court entered an order addressing HPFS's and Trustmark's other requests. The order stated that the Receivership Order neither prohibited HPFS from presenting, nor Trustmark from honoring, the letter of credit, and denied Trustmark's request to modify the stay to allow Trustmark to set-off against the cash collateral. The district court stated, "[a]s an initial matter, Trustmark explicitly agreed to pay HPFS on the letter of

credit in precisely the circumstances at issue here and to refrain from seeking judicially-sanctioned release of its payment obligation." The district court noted that the letter of credit transaction involved three separate contracts[2] and that the "obligations and duties created by the contract between [Trustmark] and [HPFS] are completely separate and independent from the underlying transaction between [HPFS] and [Stanford]." *See cf., In re Coral Petroleum, Inc.*, 878 F.2d 830, 832 (5th Cir. 1989). Based on the caselaw, the district court "held that the tripartite nature of letter of credit transactions means that Trustmark will pay HPFS with Trustmark—not Receivership Estate—funds."

The district court also rejected Trustmark's request to exercise its set-off rights against cash collateral, stating that "although paying HPFS on the letter of credit obligates Stanford to reimburse Trustmark, the Receivership Order prevents Trustmark from exercising its secured creditor rights over Stanford['s] [] cash collateral absent [the district court's] approval." Because the cash collateral was pledged by Stanford to secure a letter of credit in favor of HPFS, the district court found that the cash collateral belonged to the Receivership Estate. Accordingly, the district court found that the Receivership Order prohibited the set-off of any debt secured by Receivership Estate assets. Trustmark appealed.

## STANDARD OF REVIEW

"We review the district court's actions pursuant to the injunction it issued for an abuse of discretion." *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008). "In performing that review, findings of fact that support the district court's decision are examined for clear error, whereas conclusions of law are

---

[2] The district court noted that "all letters of credit . . . involve three separate and independent contracts: (1) the underlying contract between [Stanford] and [HPFS]; (2) [Stanford's] contract with [Trustmark] to issue the letter of credit; and (3) [Trustmark's] contract to pay [HPFS] pursuant to the letter of credit's terms." (citing *In re Originala Petroleum Corp.*, 39 B.R. 1003, 1007 (Bankr. N.D. Tex. 1984)).

reviewed de novo." *Affiliated Prof. Home Health Care Agency v. Shalala*, 164 F.3d 282, 284–85 (5th Cir. 1999).

## DISCUSSION

Trustmark presents two main arguments on appeal. First, Trustmark claims that the district court abused its discretion when it denied Trustmark's request to modify or lift the Order and authorized HPFS to present, and Trustmark to honor, the letter of credit for payment. Trustmark claims that the district court abused its discretion when it found that Trustmark failed to offer any compelling reasons to exercise its set-off rights. Second, Trustmark argues that the district court erred by not balancing the interests of Trustmark's set-off rights over the interests of the receivership. We find neither argument persuasive.

With regard to Trustmark's claim that the district court abused its discretion in ruling that HPFS could present the letter of credit, Trustmark presents no arguments to this court that were not before the district court, and we find no reason to reverse the ruling of the district court on this issue. In making its determination, the district court noted that the tripartite nature of letter of credit transactions required Trustmark to pay HPFS with Trustmark funds, not Receivership funds. *See In re Compton Corp.*, 831 F.2d at 589 ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued."). Thus, the district court found that payment of the letter of credit "will not divest the Receivership Estate of property since neither the letter of credit nor its proceeds are property of the Receivership Estate under the Receivership Order." The conclusion reached by the district court is correct. Although Trustmark protests this conclusion, honoring the letter of credit is exactly the position Trustmark put itself in by issuing the letter of credit in the

first place. It cannot now avoid that conclusion simply because its means of recovery from Stanford may be frustrated by the Receivership Order. We therefore affirm the district court's ruling that the stay does not enjoin HPFS from presenting the letter of credit to Trustmark.

The second issue that Trustmark contests on appeal is equally straightforward. Trustmark essentially argues that the district court did not weigh the interest of its set-off rights in ruling that Trustmark's claims stemming from the letter of credit would draw from receivership funds. In its briefs, Trustmark argues the district court should have, but failed to apply the *Wencke* test. The *Wencke* test is a balancing test that sets forth three factors for courts to consider in determining whether to modify or lift a stay which prohibits persons from commencing any suits against a receivership estate. *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984). This court has previously described the test by stating:

> To determine whether an exception should be made to a stay of proceedings in a case such as this, the court should consider "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."

*Stanford I,* 424 Fed. App'x at 341 (quoting *Wencke*, 742 F.2d at 1231). Although this court has not explicitly required the district courts to use the *Wencke* test, we have noted that these factors "are a useful set of considerations" in determining whether a stay should be modified or lifted. *Id.*

Trustmark's argument that the district court committed error by not using the *Wencke* test and by not properly weighing its set-off rights fails for a number of reasons. First, the district court did not apply the *Wencke* factors in determining whether to modify or lift the stay because Trustmark failed to raise

No. 11-10355

the *Wencke* test before the district court. That argument is therefore forfeited. *See In re Fairchild*, 6 F.3d at 1128 (holding that in order to preserve an argument on appeal, "the argument must be raised to such a degree that a trial court may rule on it"). Second, even if it was not forfeited, the district court does not need to mechanically echo the *Wencke* test in its decision. The district court did take into account the factors of the test without explicitly stating them.

Finally, even if we found the failure to state the *Wencke* test to be error by the district court, we cannot say that the *Wencke* factors clearly support Trustmark's argument. The first factor—whether the moving party will suffer substantial injury—weighs in favor of the Receivership. This factor is essentially a balancing of Trustmark's interest with the interests of the Receivership. *See Stanford I,* 424 Fed. App'x at 341 ("The first factor essentially balances the interests in preserving the receivership estate with the interests of the Appellants."). While it is probable that Trustmark will suffer injury since it is not assured of recouping the full letter of credit amount from the Receivership, that does not outweigh the interest the Receivership has in maintaining the estate. The Receiver's task to "marshal, preserve and conserve the receivership estate is as much for [Trustmark's] benefit as for the benefit of all the other investors—investors who also lost amounts of money" is an important interest. *Id.* The final two factors cancel each other out with the second factor—the time in the course of the Receivership—weighing in favor of the Receiver, and the third factor—the merit of the moving party's underlying claim— weighing in favor of Trustmark. This means that the *Wencke* factors, on balance, indicate that the district court's decision was correct. We therefore affirm the ruling of the district court.

Trustmark may resent this ruling since it requires it to pay immediately, while requiring it to enter into a more contorted process for satisfying its secured claim. This, however, is the nature of receivership and does not prevent it from

No. 11-10355

seeking a settlement with the Receiver to avoid that potentially lengthy process. Nor does it necessarily dictate the outcome of any future claims Trustmark might have since this ruling is strictly limited to the facts of this case as they stand at this time in the receivership process.

## CONCLUSION

For the reasons stated above, we AFFIRM the ruling of the district court.